Your Honor, third case in the morning, call 219-0030, Nicholas Braski v. Suburban Law Enforcement Academy, Pet Hall. On behalf of the F1, Mr. Edward P. Graham. On behalf of the F1, Ms. Emily Day Sheehan. Thank you. Mr. Graham, I would indicate while you're walking up that Justice Jorgensen regrets that she cannot be here today. Of course, you know our arguments are recorded, so she will listen to the oral argument before we render a decision in this matter. And then, counsel, I would indicate that we have received a motion for leave to file an appendix to your brief. And is there an objection to the court allowing the motion, Ms. Sheehan? No? Okay. It will be allowed. Thank you. My name is Jeffrey J. Vores. I'm co-counsel with Mr. Graham. I'm sitting at the counsel table. And I'm sorry, tell me your name again. J. Vores. J-A-V-E-S-A-V-I-C-T-E-R-O-R-S. Thank you. Good morning, Your Honors. Counsel, may it please the court. On September 20th, 2018, when the Honorable Judge Kleeman of the 18th District entered a dismissal with prejudice of a breach of contract claim on my client, Nichols Bradstein, of his Second Amendment complaint, there was an injustice done without proper consideration of the relevant facts and the proper application of the existing law regarding motions to dismiss. Subsequent to that, the Court's denial of the motion to reopen proves and motion to reconsider compounded this injustice. What proofs were there to reopen if the case never went to trial, didn't even go to summary judgment? Well, Judge, if... We're talking about evidence, I think, Your Honor. Right, but we're also talking about a Rule 615 motion that was granted, so it's all in the pleadings. So actually it's a motion to reconsider with newly discovered evidence, theoretically, no? Well, Judge, we took the tact that we didn't know exactly what would happen. We thought it was motion to open proofs because attached to our complaint were two exhibits, which is evidence. And as you know, an exhibit controls over the allegations of the pleadings. So there was evidence in this matter that the Court had considered, and that was our thinking regarding new motion to reopen proofs. We think that the Stringer case and the Glinowitz case of this Court allowed for such a thing, particularly Glinowitz case. I'm not going to... I know it was this district's case, but in that instance, that was a motion in limine that was at issue. And this Court said that the motion to reopen proofs was appropriate based upon the factors that were to be considered as set forth in both Stringer and in Glinowitz. I acknowledge that the Stringer case has a little bit different factors than Glinowitz, but the Glinowitz factors are similar to Stringer. And I believe the most important thing, when you're considering the motion to reopen proof, is you want to make sure that there's a complete and accuracy of the information to aid the trial court in making a just ruling. But now here, even though the trial court did not allow the proofs to be reopened, the Court actually did make a ruling and said that this would not change the result. So the trial court actually looked at it and indicated that it wouldn't change the result. Well, Judge, I believe the court was mistaken and did not apply the proper law regarding and it's a two-part issue. He was talking about the motion to dismiss and whether he would have dismissed a third amendment, as I recognize. Well, dismissed the second amendment. If we had, if we were allowed to use that, the role-player entry memo, as I understood it, he was speculating regarding, I don't think I would have, I would have found. I'm sorry? Found a, I don't, he's, as I understood it, Judge, he would not have allowed a third amendment complaint to stand for the similar reasons. And I believe he misapplied the laws, the law regarding motions to dismiss in this matter. But for sure, he did not, he did not properly consider our motion to reopen proofs because, as I understood his ruling, he did not find any calculation on, calculated risk by my client. He did not find anything purposeful in regarding the late discovery of the e-mail, the role-player memo. I'm sorry? He said it certainly was not newly discovered, correct? No. He sympathized with the fact that technology is challenging for certain people, but made the comment that it was available all of the time that these proceedings were going on. Isn't that correct? He did say that, but, Judge, and it was, it was available to both sides. In fact, early on in the case, College of DuPage filed their joint motion to dismiss and motion for summary judgment, and they attached Mr. Charles Currier's affidavit. And I'll read it to you, what he stated in that affidavit. And that's evidence, Judge. That is evidence. He stated, Mr. Currier says, I'm the vice president of information technology at College of DuPage. And I quote, the college uses an archive system called Soda Vault to archive all mail correspondence sent to or from a at cod.edu e-mail address. This uses standards throughout COD. The college customarily stores all e-mails sent to or from at cod.edu e-mail address in Soda Vault for at least a year. Soda Vault contains an interface that a user can enter search terms or parameters. Soda Vault will then search the archives for e-mail correspondence that fits the search criteria. And they found the portion of the application of the March 12th e-mail sent from Mr. Newton to our client, Mr. Graske, and 25 or 26 other people, first responders. The role-play memo? No, this was not the role-play memo. This was the – The letter. No, it says March 12th. It says all. Subject, COD application. And it's 108. I have 108. It's attached to my – It's attached to my – Post to reopen proofs is Exhibit B. Okay. Yes, it's Exhibit C. And it says, attached is the process and the application for being placed in the system as a COD employee. The benefit of this is easier for payroll and chucks. That's done much faster. You are covered by insurance and workers' comp in the event you are injured. And further on. And my client, when it was first sent to him, could not open the attachment because of technical difficulties. So Mr. Currier found that attachment, which is just – it's a one-page thing. It gives a link, I believe that's what they call it, to the paperwork. And it says to fill out all of the paperwork and to fill out an application. And that's it. Exhibit C1 to Mr. Currier. But at all times, COD had the role-player entry memo and knew about it. And because, one, Mr. Newton, who was the coordinator for SLEA, sent it to my client, as we find out. Well, what is the significance of that memo, according to you? The role-player memo? Yes. Well, Judge, the role-player memo is the roadmap, for want of a better expression, regarding how Mr. Braske and other role-players for SLEA would become eligible for workers' comp and other benefits as adjunct faculty, as I understand. And that roadmap, just like the March 12th e-mail, references an employment form or an employment application. Well, it says an employment form, Judge. It doesn't say application. Okay. What form did your client receive and fill out before he was interviewed? Judge, my client never received the form himself because, one, when the original memo was sent to him, due to technical difficulties, he could not open it. When he was able to get back to this area, he contacted Mr. Newton and said, I could not, and it's in our complaint, Judge. It's in paragraph 9 of our complaint. He contacted him and says, I couldn't fill it out. What am I supposed to do? And Mr. Newton said to him, well, you know, come in and then fill it out on the day of the red man drill. But he didn't do that, did he, before he participated in the drill?  On the day in question, he went early and talked to Mr. Newton, who again told him, it is paperwork. You can fill it out after you finish the practical. Now, he was never given the application that day. He was injured. The only thing they gave him was ice, and he had to take himself to the hospital. And so if he couldn't open it, you're contending even a document he couldn't open constituted an offer that he accepted by going ahead and participating, but he didn't know what the offer was or contained because he couldn't open the document?  How does that follow? Well, he knew, Judge, because he had received the March 12th, the first page of the March 12th memo. He said, and he had also received way back about six months before from Mr. Newton, the Royal Player Entry Memo. He just could not locate it on his communications device because he's not an IT professional like Mr. Currier. He read it, and this is how it works. You are considered an independent contractor proceeding. What this means is that initially, you will get paid by the College of DuPage, but you will not be afforded benefits, which would eventually include workers' comp and other. It goes on to state, after a few classes of role-playing, you will then be given an employment form in which you will be able to participate as recognized by SLIA. It's just an employment form that's known. It's not an application. Well, how do we know, counsel, an employment form? We don't know what that is. How does anybody know what that is? An employment form could be very well an application. Well, Judge. An application could be understood as an employment form. Judge, we, in response to some of the motions that, the motion to dismiss and summary judgment that's College of DuPage filed, we sought discovery from Judge Kleenman. Now, it was brief, and because of the date, the original date for hearing, Judge Kleenman was on a trial on another matter. Judge McKillop entered an order discontinuing the case to, I believe it was the April 3rd or 4th date, and no reference to the motion for discovery was included in Judge McKillop's order. And when all, the judge and both parties dropped the ball, Judge, and no one, no one, the motion for discovery was not ruled upon. What was the offer, the role-playing memo or the March 12th email? The role-playing memo was the offer. So the offer, the offer was specific that if you do a few classes. If you do a couple, a few classes. What's a few? Well, Judge, in this case, we set forth in our complaint, he did a, he did a traffic stop. No, no, what's a few? I mean, if I'm making you an offer for employment, I say, yeah, if you do a couple things here, then I'll consider you an employee. Well. What is a few? Judge, we know in this instance it was two. For sure? Yes. Because of the March 12th memo? Because of the March, because of the March 12th email. Email. Which says, here's the process, sir, to become a COD employee. Here's the process. Fill out the application to be placed in the system. And then once you fill out the forms, let me know so we can notify our staff so you'll be put in the system. So all this has to do with filling out forms and applications. Judge, in our pleadings, in our complaint, we assert, and those assertions should have been taken as true by Judge, by the judge, Judge Clemen, which he didn't. He ignored the assertions that, on the day in question, my client spoke with Mr. Newton at the facility before he participated and was told, don't worry, it is just merely paperwork. You can complete it after you're done. So, Judge, we're asserting it was a complaint implied in fact by the conduct and action of the parties. First. Was that implied contract theory ever presented to the trial court? Judge, it is in our complaint, the facts regarding it. The fact that we didn't call it an implied in fact complaint, Judge, as the Supreme Court stated in the Illinois graphics versus Nickham case. May I continue, Your Honor? You may. Thank you. The Nickham cases, it's the allegations of a complaint that define the cause of action, not the name or the title of what anybody states on it. So, Judge, the court was required to give our complaint that every factual allegation was to be taken as true. And in this case, the judge ignored the allegations regarding what Mr. Braske did and what Mr. Newton did on the day of the, that he was injured. And that was, that's what, that is the final consideration for the contract implied in fact. We have an offer. He participated in both the two prior practicals, they called them. He, Judge, in fact. Well, but that was clear. He participated as an independent contractor. He participated. And if you read the role-playing memo, after a few times as an independent contractor, we'll send you the employment form. Okay? On March 12th, the form was sent to him. And he couldn't access it at that time. He talked to, what more could he have done than talk to Mr. Newton and say, well, what can I do? I couldn't access it. How do I do it? And Mr. Newton says, don't worry about it. It's mere paperwork. Sign it afterwards. So he says, so if it's taken as an offer to apply, an offer, an invitation to offer, like the Steinberg case. Which you're not. Which you're not. I'm sorry. If any of these things, any of these, whether you're talking about the role-playing memo, the March 12th email, or the representations made on the day by Newton. Well, Judge, I can explain. If you take all those as an invitation to make an offer, then the offer was never made because the application was never filled out. Well, Judge, the role-playing memo was the invitation for an offer. Well, you told me before that was the offer. Well, it is the offer. Well, is it the offer or the invitation to make an offer? It is, Judge. So totally different things. It is the offer. Okay. Please come. You are considered an independent applicant for a few times. Then we'll send you the form. And you'll be in the system with all the benefits. So that's the offer. The acceptance was three acceptances. The first that was, I believe it was in February. The second was March 5th, which is part of our complaint. Well, each one of those would only be partial acceptance because you'd have to do a few claims, whatever a few is. So the first one wouldn't be an acceptance. You're correct, Judge. It was a partial acceptance. The second one was a partial acceptance. And then he received the form. He could not access it. He talked to the person who was in charge. As I said earlier, what more could he have done? And Mr. Newton says – Well, you filled out the form before being considered an employee. That's what you could have done. Well, Mr. Newton says do not, don't. You don't have to. It's a formality. Those were my words, not his. I believe he said it's mere paperwork. And, Judge, logically, in an employment context, Judge, it makes no sense to me that the application itself was the invitation to offer because that then leaves it up to Mr. Bransky to say whether he's going to be an employer or not. That's not the way, in my experience, that's not the way employment activity went. You see an ad in the paper or somebody tells you there's a job opening. You go to the place or contact them or nowadays you use one of those – I think ed.com and you make an application with your resume. And they contact you to see if you're a qualified candidate for their job. In this instance, they're asserting that, okay, whatever we did before this for us is nothing. We didn't even offer you anything. Why are you here is really what it comes down to. Why was he there before if not – if he was not trying to comply with this role-player memo, which was the offer? Okay. You'll have time on the rebuttal. Thank you. Thank you, Your Honor. Ms. Duke? Good morning. May it please the Court. Counsel? The Circuit Court correctly dismissed Mr. Braske's second amended complaint with prejudice and denied his post-judgment motions. And three aspects of the Circuit Court's ruling are important. First, the Circuit Court found that the March 12th email from Mr. Newton was an invitation to make an offer. And Mr. Braske never made an offer because he never submitted an employment application to the college. Thus, there was nothing for the college to accept and no contract for employment existed. Was there an implied contract, though, when he actually accepted pursuant to what the allegations in paragraph 9 of your second amended complaint that Newton told him he didn't have to fill out the form before he did the exercise? No, Your Honor. An implied contract, in fact, requires both a meeting of the minds and all of the essential elements of a contract. And if you look at the allegations in paragraph 9, what he says is Mr. Newton told him he could complete the application at practical. So even if there was some agreement as to when the timing for that application was to be submitted, it's undisputed that Mr. Braske never actually completed the application. And beyond that... Right, but if he had filled out the form before the exercise, would he have been an employee? No, no. And that's important because he would have filled out the application, but there's still a process that an employment application has to go through. The college would have had to review that application in order to put him into the system, set up all of the attendant benefits, get the appropriate paperwork from him. Council cited to pages 108 and 109 of the record, which is the full email on March 12th, that contains two links. There's a link to complete an employment application, which goes through the employment application process, and then there's another link for filling out all of the human resources paperwork that's associated with becoming an employee. And he doesn't allege that he did either of those things. And what's more, he doesn't allege that Mr. Newton had the authority to hire him on the spot, and he does not allege that even if he had filled out the paperwork that day, that he would have been an employee immediately as opposed to an independent contractor for that day's exercise. Second, the circuit court dismissed the breach of contract claim pursuant to Section 615. On such a motion, the court is limited to four corners of the complaint and the detachments, and the court didn't consider any evidence, and there's no proofs to reopen. And third, the circuit court found that even if Mr. Braske's failure to locate the role play entry memo was excusable, it doesn't change the result here. Rather, the plain language eval email confirms that practical participants are independent contractors unless and until they submit an employment application and they are accepted as an employee by the college. Accordingly, the circuit court reached the correct result, and we would ask that the court affirm. How did the independent contractor agreement get into the record? I believe that that was attached to one of the motions that was filed in the case. That may have been part of the complaint. I can tell you in just one second, Your Honor. Yes, it was Exhibit 1 to the complaint. At least one of his independent contractors. So that was considered by the court in the 615 motion? Yes. Okay. Who wrote in Redman No. 3 in the data 323.15 in what appears to be different handwriting than the earlier handwriting? I don't believe that there's any allegations in the record to that fact. Taking a step back, counsel talked a lot about the updatement of Mr. Currier, and the procedural history of this case involved two prior motions to dismiss that were combination motions both to dismiss under 615, 619, and motions for summary judgment. In response to one of those motions, a plaintiff made the request to conduct discovery. The circuit court stayed the briefing on the 619 and summary judgment portions of that motion and put off the motion for discovery, ordered the parties to brief the 615, made some rulings on that, and then the plaintiff opted to re-plead. That's how we got to the Second Amendment complaint. That's why nothing was ever done with the motion to conduct discovery, because it wasn't necessary after the court's ruling on just the 615 portion of the prior motion to dismiss. With respect to the role-play entry memo, Mr. Braske has stated a number of times that the college has always had this, but he also had it. And, in fact, he makes allegations to that effect in his own complaint, and I direct the report to part of Hennix 59 of paragraph 5, where he references the specific date on which he received the role-play entry memo, the September 23rd. After he received that, he then participated in two practicals as an independent contractor. Then on March 12th, he received an e-mail that requested that he complete an application. And that's consistent with the language of the role-play memo, which says, you are considered an independent contractor. What this means, initially, is that you will get paid by the college, but you will not be afforded benefits, which would eventually include workman comp issues and pension contributions. To be blunt, in the event you sustain an injury, your work or personal insurance will have to cover your expenses and not the college. After a few classes of role-playing, you are given an employment form. The March 12th e-mail is a follow-up to that, and Mr. Braske even alleges that he received an e-mail that requested that he complete an application, and it's undisputed that he never did that. Now, under the Steinberg case, that really should be the end of the inquiry. The circuit court specifically noted that asking people to fill out an application is an invitation to make an offer, and the application itself is an offer to be employed. Counsel said it's not up to Mr. Braske to decide whether or not he's an employee, and he's exactly right. It's up to the college. Once the college received the application, they could assess that application against its job criteria and make a determination about whether or not they were going to make him an employee of the college. So it was the college that had the power to accept an offer, not Mr. Braske. So he says in his complaint that the March 12th e-mail was the offer, and his participation in the practical was the acceptance, and that just can't be. First, it's contrary to Steinberg. And second, even if you could somehow construe that March 12th e-mail as the offer, Mr. Braske did not accept that offer, and the law is clear on that point, that acceptance has to conform exactly to the terms of the offer. The e-mail, the March 12th e-mail, does not say that you accept by participating or showing up. In fact, there's no mention of the March 23rd practical or any other practical at all. Rather, what that e-mail says is, here's the process, complete the forms. And he just didn't do it. Third, and most practically, that's just not how employment works. You can't just show up to a job because you've got an e-mail about it and claim that you're an employee who's entitled to insurance coverage and retirement benefits and all of these other things. Just showing up renders the employment application process a complete nullity. As I mentioned before, the college could have rejected his application. In fact, in the role-play entry memo on page A-115 of our appendix, Mr. Newton specifically says not everybody's going to get hired. Or, alternatively, there may be very good reasons why some of these active-duty police officers would have wanted to remain independent contractors versus becoming college employees. For example, perhaps their police departments may prohibit dual employment, and Mr. Newton even references that in his role-play entry memo on page A-114, where he says, we assume your department knows you're working part-time, so please follow the rules and regulations for your department in reference to part-time employment. The college shouldn't be made to guess whether somebody wants to be an independent contractor or an employee, and that's why there's the process in place. And Mr. Braske didn't follow that process. With respect to the motion to reopen proofs, I just want to touch on this briefly. The circuit court was correct that there were no proofs to reopen. It was a 615 motion. The court looked at the four corners of the complaint. There's no discovery mechanism on a 615 motion. Really, what the thrust of Mr. Braske's motion to reopen proofs was, have the court consider the role-play memo in connection with this breach of contract claim. And the circuit court did do that. The court ruled that there was no proofs to reopen, but it certainly considered the impact on that memo in ruling on his motion to reconsider. With respect to the motion to reconsider, as a threshold matter, he never raised in his application of the law in the circuit court that was not the basis of his motion to reconsider. The basis was newly discovered evidence, being the role-play memo. And so he's waived any argument that the court misapplied the law with respect to dismissal of his breach of contract claim under Powdrick case. The role-play memo is not new evidence. If you look at his complaint in paragraph 5, it's on page 859, he alleges the exact date that he received the memo, September 23, 2014. And that's the date on the covering note, which is A113. It's not enough to say, I just couldn't find it. He admits in his affidavit that he was aware of the existence of the memo and that it was in his possession during the entire 18 months of the case. He just couldn't find it. But what's missing from that affidavit is a reasonable explanation for why he didn't locate it or exercise any due diligence in trying to search for it. He says in paragraph 4 of his affidavit that he's not technically proficient or particularly computer savvy. And the court was sympathetic to that fact. But that's not enough. He doesn't say what steps he took to try to find it. He doesn't say whether he tried to get some help in locating it. It's silent. And more to the point, he didn't really need the document itself. He could have put facts, and he chose not to do that. This is analogous to the Wolfong case. He can't just continue to have claim effort being dismissed and then frantically gather evidence after the fact to support his claim. But in the alternative, the trial court did look at it, right? The trial court did consider it. And what the end result was is that the court found, even if I were to consider this in the light most favorable to you, it doesn't change a single thing about this case. The memo says you are considered an independent contractor. You don't get insurance coverage. You don't get workers' comp. If you're injured, your personal insurance or your work insurance has to pick it up. The college will not pick that up. That's very clear on the role-play entry memo's plain language. And it says, after a few times, you're given the form to apply. And he was. He was provided with the form to apply, and he chose not to follow the process. So because he never submitted the application, the college had nothing to consider and couldn't make a determination one way or another to make him an employee or not. And because he opted not to follow that process, he can't, under any set of facts, state a claim for breach of contract. And so we would ask that the court affirm the circuit court's ruling, unless the court has any further questions. There was a request to file a third amended complaint. Was there not? At the time that his second amended complaint was dismissed, they did not request for him to file an amended complaint. It was dismissed with prejudice, and they did not make that request to the court. Pardon the prayer for a release of appeal. Yes. But that was not made in the trial court? It was made as part of the motion to reconsider, I believe. I see. But it was not. That was not a request that was made at the hearing where the court ruled on the motion to dismiss. And no amended complaint was ever attached to that motion, correct? Correct. Okay. Anything further? Okay. Thank you. Mr. Chambers? I'll try and respond to some of your questions that you had. For example, this was Exhibit 1 to the second amended complaint around the independent contract agreement. And my client affirmed that he did not write the date of the agreement or the scenario, the red man number three scenario in there. That was inserted sometime afterward. And if you look at the date it was originally signed, he signed it on 3-5-15, the date of the traffic stop that he participated in, which is basically what Mr. Newton's Volclair memo, entry memo said would happen. You become an independent contractor and then you become, after we look at you, you become part of COD. Judge, does COD have anything to say about that or just Mr. Newton? Well, Judge, one of the things counsel inferred and stated was that COD had the right to accept the application of anybody who retired. And it's nowhere in the record regarding that. Judge Kleeman, in my opinion, improperly focused on that thought in his head, that if you have an application, well, if you apply someplace, it doesn't mean you're going to get in, unless in college you pay money out of the table. But there's nothing in the record except Mr. Newton's statements in the role-playing memo and his statements to my client on the day in question. Now, the issue of his authority was never raised by either party, but it's apparent that he was the coordinator for SLEA. In our complaint, we affirm that with the facts, and I don't think there's a question that he had the authority to hire people as set forth in his March 12th email. My client was just not showing up. My client responded to emails, participated as an independent contractor two times, as he was requested to, and was part of the role-player memo set forth. How does the college or even Mr. Newton know why your client showed up that day? I mean, you're saying he showed up to be an employee. But he showed up twice before to be an independent contractor, and as counsel points out, the memo is saying that a lot of police officers check with your employment because the department may not want you to be employed here. Well, Judge, I respectfully disagree with what counsel said, what the role-playing memo said, because she took it out of context. The statement that he says is, for example, in traffic stops I usually only need to hire 18 to 20 people, but if 35 sign up, I can't employ everyone. So that was specifically referring to the different practicals about the number of people that were needed for each one. My question is this. Should the college, based upon this role-playing memo, assume that they're on the hook for insurance and retirement for everyone who shows up on their third and subsequent visit? Only if they received the March 12, 2015 memo with the application, were able to fill it out at that time, and did fill it out. We asked for that information in discovery, and it was not given to us. The role-playing memo was always in possession of COB. They try to assert now that in some way my client, he should have performed more. They're not filing the complaint. It's a fact-tweeting jurisdiction. It's up to you to put your facts out there. They don't need to supply it. Judge, I respectfully disagree that we have to supply every fact. No, I'm not saying that. But you're putting it on them that, well, they knew that this memo was floating around out there. Well, they don't know how it ties into your complaint unless you put it in your complaint. Well, Judge, I disagree. When you read the emails regarding the role-player memo, Mr. Newton on September 23, 2014 at 3.38 p.m. says, and it's just to Mr. Braske and somebody else at palatine.illinois.us, Hello, recently your name was given to us, expressed interest in being a role-player at the Suburban Law Enforcement Academy. Please read the attached document, and if it meets your willingness, please respond back with an email to me. I thank you in advance for your interest. So this was sent by Mr. Newton after he heard about my client's interest in being a role-player, where I don't know. I don't recall that fact. But my client attempted, as set forth in his affidavits, Judge, he was always trying to find everything he could regarding this case on his communications devices. It wasn't just after the motion to dismiss was granted. It's just that he still can't explain, as set forth in his affidavits, how he ultimately found the role-playing memo. All right, counsel, thank you very much for your arguments. Thank you, Your Honor. I appreciate your attention. Thank you both for your arguments this morning. The court will take the matter under advisement. We'll render a decision in due course.